UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: PRADAXA (DABIGATRAN ETEXILATE) PRODUCTS LIABILITY LITIGATION ) ) ) ) | 3:12-md-02385-DRH-SCW MDL No. 2385 |

This Document Relates to: All Cases

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PERTAINING TO THE DOCUMENTS REVIEWED BY A WITNESS IN PREPARATION FOR A DEPOSITION**

In the wave of initial depositions set to commence shortly, Plaintiffs have requested that Defendants Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") and Boehringer Ingelheim International GmbH ("BII") (collectively, "Defendants") provide a list of all documents reviewed by witnesses, including the documents selected by attorneys, in preparation for their depositions. This Court has already held, in *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 2:09-md-02100, 2011 WL 2580764, at *2 (S.D. Ill. June 29, 2011), that "counsel's selection of documents in preparation for a client's deposition is shielded from discovery under the work-product doctrine." Accordingly, in *Yasmin* the Court ordered that Plaintiffs could obtain a list of all documents reviewed by a witness in preparation for deposition, but only if that list did not reveal any information about which documents were selected by an attorney. *Id.* Because depositions in this case are at a much earlier stage than in *Yasmin*, and because of the fast pace of the current litigation, almost all of the documents reviewed by the witnesses will have been selected by Defendants' attorneys. Thus, unlike in *Yasmin*, providing a list of documents reviewed by a witness will inevitably reveal counsel's

1

document selection choices, thereby violating the work-product privilege. For this reason, Defendants seek a protective order barring disclosure of the list of documents reviewed by a witness in preparation for a deposition.

I.    BACKGROUND

This MDL is still in the very early stages of a fast paced deposition process. Under the governing CMOs, company depositions are to be conducted under an extremely aggressive time-line, where all 44 permitted depositions on two different continents are to be completed between March and December of 2013. *See* CMO 26 ¶ 3(b); CMO 13 ¶ E. So far, one deposition has commenced, and Plaintiffs sent notices for several more earlier this month.

In the notices Plaintiffs served on April 5, 2013, Plaintiffs requested that Defendants produce "a list of all documents reviewed in preparation of the deposition, identified either by bates numbers or other identifier." *See* Notices of Dep. of Bob Johnson, Lara Crissey, Michelle Kliewer, Laszlo Szanka, and Jeffrey Friedman. Through this request, Plaintiffs are not asking for new documents. Instead, Plaintiffs are asking Defendants' attorneys to identify which documents they consider particularly important, such that they are worthy of review in witness preparation.

This Court has already held that such information is protected by the work-product privilege. In *Yasmin*, the Court recognized the bedrock principal that "counsel's selection of documents in preparation for a client's deposition is shielded from discovery under the work-product doctrine." *Id.* at *2. The Court therefore issued an order barring Plaintiffs from obtaining any information about which documents reviewed by a witness had been selected by an attorney. Importantly, the Court issued its order in *Yasmin* at a very different stage in the

2

litigation: the MDL was almost two years old; at least forty-three depositions had already been completed; and presumably hundreds of exhibits had been used in the depositions. *See In re Yasmin & Yaz*, Tr. of 6/8/11 Status Conf., p. 2. For this reason, the deposition preparation process when the Court ruled was almost certainly very different from the one in this case, and the Court found that it was possible for Defendants to disclose a list of all documents reviewed by a witness without threatening the work-product protection afforded to the document selection choices of the attorneys. That simply is not possible in this case where the vast majority of documents reviewed by the witnesses will have been selected by Defendants' attorneys .

This case involves a vast quantity of discovery; Defendants have already produced over a million documents, and because the deposition schedule is compressed, witnesses have minimal time to prepare. Further, witnesses are without the aid of any notice from Plaintiffs as to which exhibits they plan to use in the depositions because Plaintiffs have not—as often occurs in the MDL setting—agreed to provide a list of documents they intend to show a witness in a deposition. *See, e.g.*, *In re Accutane Products Liability*, No. 8:04-MD-2523, Order, June 21, 2005 (overruling plaintiffs' objections to requirement that parties give advance notice of exhibits to be used in a deposition, and finding that the practice "ensures that discovery proceeds efficiently"); *id.*, Amended Report and Recommendation, July 8, 2005 (incorporating requirement in revised discovery CMO). Indeed, although Defendants proposed that such a provision be included in the CMO for this case, Plaintiffs rejected the suggestion, presumably because they feared it would impinge upon their mental processes.

Without such advanced knowledge of what will be covered in the deposition and on the tight schedule presented here, witnesses lack the capacity to independently review the relevant

3

documents to ensure that they are ready to provide a useful deposition. It falls to Defendants' lawyers, then, to carefully identify and compile a manageable subset of documents for the witnesses to use in their preparation. In order to do so, the attorneys must make legal judgments about which topics and which documents the other side will consider significant. At this early stage in the deposition process, with little concrete information about what particular issues and subjects are Plaintiffs' primary focus, those legal judgments must be based on Defendants' estimation as to the strengths and weaknesses of Plaintiffs' case. It is therefore inevitable that a list of the documents examined by the deponent will provide a clear window into how Defendants' attorneys view Plaintiffs' case. Because, as this Court has held, such information is protected from discovery by the work-product doctrine, Defendants respectfully ask the court not to require such an invasive disclosure.

## III. LEGAL ANALYSIS

### A. The Work-Product Doctrine Protects Against the Disclosure of Documents Used by Counsel in Preparing a Witness for a Deposition.

The work-product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), provides that "materials 'prepared [by one's opponent] in anticipation of litigation that contain the mental impressions, conclusions, opinions, or legal theories of an attorney'" are "out of bounds" for discovery purposes. *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763 (7th Cir. 2006) (quoting F.R.C.P. 26(b)(3)). Because revealing which documents Defendants' attorneys have used in preparing witnesses for depositions will inevitably reveal the attorneys' "mental impressions, conclusions, opinions, or legal theories," this information is protected by the privilege. As this Court held in *Yasmin*, "[c]ounsel's designation and compilation of materials to

review with a witness prior to his or her deposition reflects counsel's thought processes and opinions with regard to which documents are legally significant and is therefore protected under the work-product doctrine." *In re Yasmin & Yaz*, 2011 WL 2580764, at *3.

This Court's holding in *Yasmin* was based largely on an analysis of the Third Circuit's decision in *Sporck v. Peil*, 759 F.2d 312 (3rd Cir. 1985), cert denied, 474 U.S. 903 (1985). In that case, the plaintiff's attorney had requested "identification and production of 'all documents examined, reviewed or referred to by [the deponent] in preparation for the session of his deposition.'" *Id.* at 314. The Third Circuit found that this production was barred by the work-product privilege because "in selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." *Id.* at 316 (internal quotation omitted)*; cf. In re Grand Jury Subpoenas (Paul Weiss)*, 959 F.2d 1158, 1166-67 (2d Cir. 1992) ("where a request is made for documents already in possession of the requesting party, with the precise goal of learning what the opposing party's thinking or strategy may be, even third-party documents may be protected"); *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research….This mental selective process reflects [the lawyer's] legal theories and thought processes, which are protected as work product.").

In *Yasmin*, this Court found that the Third Circuit's holding is fully "consistent with the Seventh Circuit's view of the purpose and scope of the work-product doctrine." *In re Yasmin & Yaz*, 2011 WL 2580764, at *1. The Seventh Circuit has explained that the doctrine of work product is designed "to establish a zone of privacy in which lawyers can analyze and prepare their clients free from scrutiny or interference by an adversary." *Hobley v. Burge*, 433 F.3d 946,

949 (7th Cir. 2006). Similarly, the *Sporck* Court observed that the selection of documents for use in preparing for a deposition should be protected because the selection process is "proper and necessary preparation for [the] client's case." *Sporck*, 759 F.2d at 316.

Indeed, if attorneys' document selection choices for witness preparation are not permitted to remain within the "zone of privacy" created by the work-product doctrine, the fundamental principles undergirding the attorney-client privilege will also be impacted, and the overall deposition process will suffer. The *Sporck* court observed that such a regime would lead a cautious lawyer to show few if any documents to a witness, thus frustrating both the preparation process and the witness's right to be properly prepared: "without the protection that the work-product doctrine accords his preparation, defense counsel may [forego] a sifting of the documents, or at the very least cho[ose] not to show the documents to the [witness]. As a result, [the witness] may not [be] prepared for his deposition, and neither plaintiff nor defendant w[ill] have realized the full benefit of a well-prepared deponent's testimony." *Id.* at 317. This is exactly the sort of absurd result the work-product doctrine has been created to avoid.

For all these reasons, and as this Court has recognized, forcing Defendants to disclose the documents the attorneys used in preparing witnesses for depositions would be "contrary to the principles underlying the work-product doctrine." *In re Yasmin & Yaz*, 2011 WL 2580764, at *2.

**B.  In This Case, Providing a List of "All Documents" Used in Preparation for a Deposition Does not Cure the Work-Product Doctrine Violation.**

Plaintiffs should not be able to circumvent the work-product doctrine by phrasing their request as a neutral demand for a list of *all* documents used by the witnesses in preparation for their depositions (rather than explicitly requesting those selected by the attorneys). As a

6

practical matter in a fast-paced litigation with tens of millions of pages of documents spread over dozens of custodians, departments, and databases, the individual witnesses would be overwhelmed if they tried to independently select documents to review for the deposition. That is why it is left to the lawyer, who has access to all of the files from all of the employees and departments, to select which documents warrant the individual witness's review. In this setting, even if the witness on his own volition decided to review a few documents from his files, the listing of "all documents" reviewed would be dominated by those selected by the lawyers.

The *Sporck* court addressed this precise issue. There, the plaintiff similarly chose to phrase his request as a demand for the "identification and production of *all* documents examined, reviewed or referred to by Charles E. Sporck in preparation for this session." *Sporck*, 759 F.2d at 314. The *Sporck* court nonetheless held that "because identification of the documents ***as a group*** will reveal defense counsel's selection process, and thus his mental impressions . . . [it] must be prevented to protect defense counsel's work product." *Id* at. 315.

To be sure, this Court's *Yasmin* order stated that a general list of documents reviewed by a witness may be identified without offending the work-product doctrine, "so long as the identification does not reveal which, *if any*, documents were selected by counsel." *In re Yasmin & Yaz*, 2011 WL 2580764, at *2. (emphasis added); *see also id.* at *1 (noting that Defendants' counsel had agreed that "identifying the documents reviewed by the witness in preparation for the deposition *independent of counsel* [was] not objectionable" ). In this case and at this stage, however, that simply isn't possible. In a list of documents reviewed by a witness in preparation for deposition, there will not be a question of which "if any" documents were selected by counsel. Because of the vast quantity of documents and the minimal time for witness

preparation, all—or virtually all—of the documents reviewed by a witness will have been selected by Defendants' attorneys.

The situation currently presented here is different from the context of *Yasmin* in another important way. In that case, when this Court confronted the question of what information could be provided about documents used in preparation for depositions, the litigation was well underway. The *Yasmin* MDL was created in October of 2009, and this Court was not asked to reach this question until June of 2011. By that time, Plaintiffs had completed at least forty-three depositions of Defendants' employees and former employees, which presumably resulted in hundreds of deposition exhibits, and the parties were beginning to discuss trial scheduling. *See* Tr. of 6/8/11 Status Conf., p. 2. Both parties would have been very familiar with the litigation strategies of their opponents, and there would have been a massive set of documents already used in depositions that could serve as the basis of review with a particular witness. To the extent there were key emails or documents the plaintiffs found most useful in the millions of pages produced in that litigation, they would have been used (and likely reused over and over again again) in the many preceding depositions. Providing a list of the previously-used documents in this mature setting would not reveal any special mental impressions of the defending lawyer.

By contrast, the deposition phase in this litigation has just begun, and both sides are working feverishly to get a handle on the massive number of documents being produced. Requiring one side to reveal what documents they believe are the most important—which make no mistake, the Plaintiffs' request would do—is fundamentally unfair. Both parties are still developing their themes and strategies, and Defendants are forced to speculate about what issues will matter to Plaintiffs and which of the tens of millions documents they might pluck out and show a witness. Allowing Plaintiffs to review a list of the documents used in deposition

preparation by Defendants' attorneys is tantamount to allowing Plaintiffs a window into what Defendants view as the Plaintiffs' likely litigation strategy. As Justice Jackson explained in the seminal work-products case, to permit such discovery would "enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495, 516 (1947).

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' motion for an order providing that the parties are not required to identify the documents reviewed by a witness in preparation for a deposition because such information is protected by the work-product doctrine.

Respectfully submitted,

*/s/ Dan H. Ball*
Dan H. Ball (#6192613)
BRYAN CAVE LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
Phone: (314) 259-2000
Fax: (314) 259-2020
dhball@bryancave.com

Paul W. Schmidt (DC #472486)
Michael X. Imbroscio (DC #445474)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, D.C. 20004
Phone: (202) 662-6000
Fax: (202) 662-6291
pschmidt@cov.com
mimbroscio@cov.com

Orlando R. Richmond, Sr. (MS #9885)
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Phone: (601) 948-5711
Fax: (601) 985-4500
orlando.richmond@butlersnow.com

Eric E. Hudson (TN #022851)
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Phone: (901) 680-7200
Fax: (901) 680-7201
eric.hudson@butlersnow.com

*Attorneys for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

Beth Rose (NJ #028491987)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Phone: (973) 643-5877
brose@sillscummis.com

*Attorney for Defendant Boehringer Ingelheim International GmbH*

## **CERTIFICATE OF COMPLIANCE WITH RULE 26(c)(1)**

Pursuant to Federal Rule of Civil Procedure 26(c)(1), I hereby certify that I have in good faith conferred with Plaintiffs' counsel in an effort to resolve this dispute without court action.

*/s/ Dan H. Ball*
Dan H. Ball

11

## CERTIFICATE OF SERVICE

      Pursuant to Local Rule 5.1 and Case Management Order No. 1, Paragraph 5, I hereby certify on April 16, 2013, a copy of the foregoing document was filed through the Court's ECF system.  Notice of this filing will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF).

                                              */s/ Dan H. Ball*
                                              Dan H. Ball