UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

---

| IN RE PRADAXA | ) | MDL No. 2385 |
| (DABIGATRAN ETEXILATE) | ) | 3:12-md-02385-DRH-SCW |
| PRODUCTS LIABILITY | ) | Judge David R. Herndon |
| LITIGATION | ) | |

---

**This Document Relates to:**

**ALL CASES**

## CASE MANAGEMENT ORDER NUMBER 38

**HERNDON, Chief Judge:**

At the status conference on June 10, 2013, the Court approved the parties' request to cancel approximately two months of depositions. The cancellation was necessitated by a number of document production deficiencies in relation to the custodial files of former and present BIPI and BII employees identified by the PSC as deponents. The parties indicated that, in light of the document production deficiencies, the custodial depositions should be delayed to allow the defendants to get their house in order and to ensure that the PSC had complete custodial files prior to taking the subject depositions. The parties further represented that the depositions could be cancelled and rescheduled without delaying the bellwether trial dates already in place. The Court concluded the requested cancellation was in the best interest of the litigation and directed the parties to confer and negotiate a revised document production and pretrial schedule that maintained the bellwether trial dates already in place.

On June 28, 2013, the PSC notified the Court via letter-brief of the parties' failure to reach an agreement regarding a revised document production and pretrial schedule. In their letter-brief, the PSC submitted a proposed Case Management Order Number 37 ("PSC's Proposed CMO 37"). The PSC's proposed CMO 37 sets forth a new pretrial and document production schedule and requires the defendants to sign a certification attesting to when a production is complete. The PSC contends that their proposed CMO 37 should be adopted to remedy the defendants' alleged failures to timely comply with Court-ordered discovery deadlines and the defendants' failure to provide the PSC with any assurances that productions are (or will be) complete such that depositions can proceed.

Specifically, the PSC outlines numerous supplemental productions made by BIPI[1] that allegedly included thousands of "old" documents. According to the PSC, the supplemental productions were made without explanation and, initially, the PSC believed the supplements were good faith updates of custodial files under the defendants' continued duty to supplement discovery – in other words "new" documents. After further review, however, the PSC contends it discovered that the

---

[1] The PSC states that their current analysis is limited to BIPI's productions because BIPI employees were the first witnesses to be deposed. The PSC, however, states that it "doesn't have any confidence in the productions of BII because, to the best of [the PSC's] knowledge, [BII's production] is being handled by the same lawyers and same vendors" PSC Letter to the Court dated June 28, 2013.

supplemental productions included thousands of documents that could have and should have been produced by March 15, 2013 – at the latest.[2]

As an example, the PSC details the custodial file production related to Jeffery Friedman. Jeffery Friedman is a medical doctor and Vice President and Therapeutic Head, Cardiology. The PSC contends he has significant involvement with Pradaxa. Mr. Friedman's complete custodial file was due to be produced on November 30, 2012. The deposition of Mr. Friedman was requested on March 13, 2013, and was scheduled for June 6-7. The PSC states that in reliance on the relevant case management orders, it believed Mr. Friedman's custodial file production was complete as of November 30, 2012 and that by May 7, 2013 (30 days prior to the June 6 deposition) the file was completely updated with any documents that had been created since the original collection of documents. On May 28, 2012, however, BIPI produced an additional 5,580 documents from the

---

[2] On November 19, 2012, the Court adopted CMO 17 which required BIPI to produce the files of various groups of custodians on November 30, 2012 and December 17, 2012. In creating the production schedule, the parties and the Court considered both the complexities of producing various types of files (paper, Pradaxa-specific, and electronic materials subject to search terms as well as when the custodians were identified as deponents). On January 2, 2013, the Court adopted Amended CMO 17 which extended the production deadlines for certain databases and provided a March 15, 2013 deadline for the custodial files of five BII deponents. BIPI did not request an extension for the custodial files produced in November or December 2012 or indicate that these productions were incomplete. On February 20, 2013, the Court adopted CMO 21 which required BIPI to produce the *complete* custodial files of additional custodians on March 1, 2013 and March 15, 2013. In order to accommodate the production of these custodial files, the Court extended the production deadlines for certain databases and for certain German Custodians. Thus, under the relevant CMOs, BIPI's custodial file productions should have been completed by March 15, 2013 – at the latest (with the exception of BIPI's duty to provide timely supplementation with "new" documents).

Friedman custodian file. According to the PSC, an initial review of the supplemental production revealed that it contained thousands of documents that pre-dated the original "sweep" of Mr. Friedman's custodial file (i.e. "old" documents that should have been produced on November 30, 2012). In addition to Mr. Friedman, the PSC details many problematic supplemental productions related to other custodial file productions. In support of their contentions, the PSC has included numerous charts outlining the alleged problems with BIPI's supplemental productions.

BIPI responds, via letter-brief, providing an equal number of charts explaining why the apparently problematic supplemental productions are not as bad as the PSC alleges. BIPI has also provided the Court with a number of explanations for the numerous supplemental productions detailed in the PSC's letter-brief. Specifically, BIPI asks the Court to consider the considerable amount of document production that has occurred in a relatively short amount of time. The following is a list of some of the additional arguments raised by BIPI:[3]

- A great majority of the original production of the custodial file documents was produced at or very near the original production deadlines.
- With the exception of one custodian, all of the documents produced after Court-ordered deadlines were documents that either presented technical processing issues (such as the need for translation) or documents that the

---

[3] This is not an exhaustive list of the numerous arguments raised by BIPI.

> defendants initially viewed as privileged but then, after further review, determined should be produced.
>
> - A majority of the supplemental productions were made months ago and have been in the possession of the plaintiffs for quite some time (*i.e.* any issue with the supplemental productions could have been raised earlier).
> - Certain documents were withheld from production because their status as "highly confidential" was under review

After a painstaking review of the parties' letter briefs, charts, the relevant case management orders, and transcripts of certain status conferences, the Court finds in favor of the PSC. Although some of the supplemental productions may have been made for legitimate reasons (vendor issues, technical problems, supplemental privilege review), the Court takes issue with the lack of transparency in alerting the Court or the PSC to matters that delayed the production of *complete* custodial files on the dates ordered by this Court. In general, the Court finds that BIPI failed to timely produce or timely respond to discovery as outlined by the plaintiffs letter-brief.

In addition, the Court is particularly concerned with what appears to be a unilateral decision by BIPI to withhold "highly confidential" documents from the custodial files of non-German custodians – without informing the Court or the PSC that such documents were being withheld. BIPI contends, in essence, that everyone knew such documents were being withheld. The record does not reflect this contention. BIPI did request additional protection for "highly confidential"

material in certain databases until such time as a confidentiality order could be entered specifically addressing protections for "highly confidential information." In response to this request, the Court entered orders establishing a global heightened protection for certain databases that contained "highly confidential" information. These orders provided that the material in specified databases (which were being produced in full) would be treated as "attorneys' eyes only" until the question of additional protection for "highly confidential" information was resolved (Doc. 86, Doc. 109, Doc. 137). BIPI also indicated, during a status conference, that it had some concerns regarding "highly confidential" information in the files of German custodians and on the G-drive database.[4] This issue was

---

[4] *See* Transcript of February 7, 2013 Status Conference:

> Mr. Ball: One other thing that we discussed both informally and with counsel back there last month, we brought up some highly confidential information and it was scientific information that had been -- that was in BRAIN and Cerberus databases. We're encountering the same issue as we go through German custodians and the G drive and I think what we discussed is we would have an extension until the end of the month to work with plaintiff's counsel to come up with a procedure for heightened protection, redaction, etcetera, with respect to that very sensitive information.

> Mr. Watts: Well, yes and no. What we agreed last month is they had until February 13th to come up with that procedure. To be fair, everybody has been working and we're not complaining about the extension per say. It's just that without stating on the record what it dealt with, there was a particular issue that was brought up last month that I agree with that we want the heightened protection on. I asked whether or not with respect to BRAIN, Cerberus, this need for heightened protection was limited to that particular issue or involved other issues. They say it may have involved other issues. Just to be clear, we want to know what the other issues are. Part of the

later memorialized in CMO 22, which indicated that "Defendants have withheld or redacted certain documents from the production of the *G-drive* and the *German custodians*..." (Doc. 109) (emphasis added).[5] The record does not reflect, however, that BIPI informed the Court of its intent to withhold "highly confidential" material from *all* custodial file productions or that it had withheld such material from *all* previously produced custodial files. BIPI's unilateral decision to do so violated this Court's orders. Considering the above, the Court

---

negotiation needs to be the propriety or the need for the heightened protection, and then if there is a need what the procedure would be.

Mr. Ball: That clarification is accurate. We agree with that.

[5] *See* CMO 22 (Doc. 109) which states as follows:

Defendants claim that certain documents within certain databases, central sources and custodial files of BIPI and BII employees, including but not limited to BRAIN, Cerberus and the G-drive, contain highly confidential and sensitive scientific information. The materials already produced in the BRAIN and Cerberus databases are deemed "Attorney Eyes Only" through February 28, 2013 to allow the parties an opportunity to negotiate an agreement to provide additional protections from production, use in this litigation, and/or inadvertent disclosure. *Defendants have withheld or redacted certain documents from the production of the G-drive and the German custodians* because they claim that these documents contain highly sensitive scientific information. Defendants shall identify the type of information and/or subject that they claim warrants heightened protection to allow the parties to evaluate the propriety of protection for the information and/or subject matter identified by the defendants. If the parties are unable to reach an agreement by February 28, 2013 regarding the scope of protection sought for such alleged highly confidential and sensitive scientific information, the parties shall contact the Court for further direction.

(Doc. 109) (emphasis added).

finds that BIPI inappropriately withheld "highly confidential" documents contrary to its agreement with the PSC and with this Court's orders.

Accordingly, the Court will adopt a Case Management Order (Case Management Order Number 37 docketed simultaneously herewith) in an effort to prevent future problems. The Case Management Order adopted by the Court reflects in large part the provisions in the PSC's Proposed CMO 37. The Court, however, has revised some of the pre-trial deadlines proposed by the PSC. The dates selected by the Court are intended to allow the defendants four weeks to prepare their expert reports after receiving the PSC's expert reports (as opposed to the two weeks proposed by the plaintiffs) and to allow sufficient time before trial for consideration of dispositive and Daubert reports. The Court is also declining to adopt the PSC's proposed revision to Paragraph G of CMO 13. The Court agrees that BII has unique production issues that make the requested supplemental production alteration (from 30 days to 45 days) unreasonable.

Further, in light of the discovery violations outlined in the PSC's letter-brief, the Court finds that a certification requirement is warranted. Although the Court is requiring both BIPI and BII to provide a certification attesting to the completeness of productions, it is not adopting the certification requested by the PSC. The Court finds that the broad certification requested by the PSC is simply not reasonable in light of the millions of pages of documents that are being produced and the number of individuals involved in producing the requested documents. Instead of the PSC's suggested certification, the Court will adopt a

certification requirement that is both consistent with Rule 26 and reasonable under the circumstances. The required certification is adopted and attached to CMO 37 as Exhibit A.

**SO ORDERED:**

Digitally signed by David R. Herndon
Date: 2013.07.10 16:22:48 -05'00'

**Chief Judge**  Date: July 10, 2013
**United States District Court**