UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: PRADAXA (DABIGATRAN ETEXILATE) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | 3:12-md-02385-DRH-SCW<br><br>MDL No. 2385 |

This Document Relates to:

ALL CASES

## CASE MANAGEMENT ORDER 41
## (APPOINTMENT OF SPECIAL MASTER)

### I. INTRODUCTION

Before the Court is the PSC's request for appointment of a special master, pursuant to Rule 53(a)(1)(C) to attend all corporate depositions. *See* FED. R. CIV. P. 53(a)(1)(C). On the following basis, the Court **APPOINTS** the Honorable Dan Stack (Ret.) to serve as a special master for all corporate depositions in accordance with the below-stated parameters and procedures.

### II. ARGUMENTS

As the basis for its request, the PSC cites the current trial schedule, improper instructions not to answer questions, and the recent loss of two months of deposition time as a result of the defendants' document production problems. The PSC argues the "atmosphere" created by the defendants' deposition conduct would benefit from the appointment of a special master, especially in light of the upcoming overseas depositions.

The PSC requests the appointment of the Honorable Dan Stack, appointed by the undersigned to serve in this very role in the Yaz/Yasmin litigation.

In opposition, the defendants argue that the PSC's request does not rest on a showing of actual need, but an unsupported, non-specific claim of an "atmosphere" of misconduct. The defendants argue that the depositions have proceeded efficiently and effectively overall, the parties have been able to resolve the disputes that have arisen, and there is no reason to believe future depositions will not proceed in the same fashion.

### III. APPOINTMENT

First, the Court notes that the PSC submitted depositions to the Court at its request, without annotations, also at its request. The defendants, in opposing the request, pointed out that the PSC failed to assist the Court by identifying deposition, page and line number, of instances where a special master could assist the Court and the parties in this complex litigation, essentially by mediating any disputes arising in the depositions or affecting counsel behavior by his presence (which has been the experience of the Court in past litigation). Ironically, in doing so, the defendants pointed to activities of plaintiffs' counsel that, while not always objectionable, was not always appropriate, and would undoubtedly be altered in a positive fashion with the presence of a special master. Obviously, the Court's analysis does not stand on which party creates the need for a special master's presence and if the movant's own behavior contributes to that need, the Court takes that conduct into account.

Furthermore, all five of the depositions submitted demonstrated some need for a special master in the opinion of the Court, though three demonstrated a far greater need

than the other two. Moreover, the overall impression of the Court is that, depending on the counsel who is conducting the examination, there is great potential for disruptive depositions. Once again, the Court did not restrict its analysis to one party or the other.

There were a great many objections regarding the responsiveness and whether the witness's answer was, in fact, responsive to the question asked. There were many complaints about the nature of the objections, succinctness and whether they, therefore, were meant to coach the witness. There were many objections about the fundamental fairness of certain questions and correspondingly the use of certain documents which the witness may or may not have seen and just how extensively he or she could therefore be questioned about the document. There was, though sparingly, some instruction to witnesses not to answer certain questions, which did not fit the parameters of the rule regarding when counsel is legitimately allowed to instruct a witness not to answer. While this list is not exhaustive, it is suitably representative to demonstrate the kinds of disputes that characterize the depositions in the past.

Objections to form were near constant, a tactic seemingly used more readily by defense counsel though used by both sides, and an objection which was useless without indication of the deficiency of the form, and in most cases frivolous in this Court's opinion, regardless of which side posed them. Consequently, the Court is left with the impression that such objections were made either "just in case" or perhaps to harass the examiner, again "just in case" one could disrupt the examiner's train of thought. In support of that conclusion, the objection was followed immediately, time and again, with an instruction to the witness that he/she could answer the question. These generally

seem to be reasonably intelligent witnesses and the concept that they needed to be reminded time after time that they could proceed with an answer is questionable. That such an instruction is little more than a delay is obvious, lending credence as well to the conclusion that they are harassing in nature rather than a genuine objection meant to preserve a form objection.

However, when the rare more substantive objections were entertained, by either side, counsel were very quick to invoke the threat to "call Judge Herndon" in an apparent effort to get the other side to back down immediately.

The essence of what can be read in the depositions is that the atmosphere was quite clearly intense and heavily partisan. While neither of those things standing alone is illegal by any analysis, time is of the essence and efficiency is essential in the depositions going forward with no time to spare. Neither side can afford to relinquish their zealous advocacy nor spend valuable time sparring over issues that must be resolved. Therefore, the Court finds a need to appoint a special master for the sole purpose of attending depositions. It is the objective of the Court that the presence of the Special Master will allow both sides to approach their professional duties in a manner conducive to an atmosphere of effective and efficient depositions. After all, depositions are court proceedings taken at remote locations designed to elicit evidence in a manner that is conducive to the schedules of the attorneys and witnesses, as well as the Court.

Because of his prior experience and adept skill in performing like duties, the Court **APPOINTS** Dan Stack, retired Illinois State Circuit Judge.

1. *Appointment*

A. The Honorable Dan Stack (Ret.) is appointed under Rule 53 as Special Master for the purpose of mediating and, if necessary, issuing preliminary suggested rulings on disputes that may arise during the course of all depositions of corporate witnesses taken inside and outside of the United States.

2. *Parameters*

When presiding over a deposition, the following parameters shall apply:

A. **Procedures.** The Special Master shall have the rights, powers, and duties provided in Rule 53, and may adopt such procedures as are consistent with that Rule or with this or other Orders of the Court. The Special Master shall endeavor first to mediate a resolution to disputes that may arise. Should mediation fail to result in an agreed upon resolution, the Special Master shall make preliminary rulings that, at the election of any party, may be referred to this Court, in the first instance, and to the State Court Judges overseeing coordinated state court proceedings, secondarily. If judicial review of the Special Master's suggested preliminary rulings is required, the parties shall bring their disputes to the Court and the State Court Judges pursuant to the procedures set forth in Case Management Order Nos. 8 and 13.

B. **Fees and Expenses.** The Special Master will be paid $400 per hour for working time, plus reimbursement for reasonable travel and other expenses incurred by the Special Master. The fees and expenses of the Special Master are to be divided evenly between the parties. The Special Master may employ other persons to provide clerical and secretarial assistance; such persons shall be under the

supervision and control of the Special Master, who shall take appropriate action to ensure that such persons preserve the confidentiality of matters submitted to the Special Master for review.

C. ***Objections.*** Clearly, Special Master Stack's role is not to make rulings but to mediate disputes and then direct the parties to contact the undersigned if his efforts fail. However, in this regard, the parties are **DIRECTED** by this Court in this fashion:

FEDERAL RULE OF CIVIL PROCEDURE 30 must be adhered to and objections must be concise, nonargumentative and nonsuggestive (meaning not directed to suggest anything to the witness). Furthermore, objections to form must state in one word the deficiency with the form, such as "Objection as to form: compound." Or, "Objection as to form: leading." Objections as to form must not be made without a good faith basis. A pattern of a failure to state the deficiency will be taken by this Court as a factor in a consideration that such objections are being made only to harass and not to preserve a valid objection. In that event, the Court will consider appropriate sanctions, even if on its own motion. Furthermore, either prior to or at the start of the depositions witnesses shall be instructed that when they hear an objection being verbalized they should give time for it to be stated and then proceed with their answer unless otherwise instructed. Thereafter, the instruction to answer the question shall not be repeated unless the witness fails to proceed with an answer.

D. ***Distribution.*** A copy of this Order shall be mailed by the Clerk to the Special

Master and to liaison counsel for the parties.

**IT IS SO ORDERED.**

Signed this 25th day of July, 2013.

Digitally signed by
David R. Herndon
Date: 2013.07.25
13:52:39 -05'00'

**Chief Judge**
**United States District Court**