UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| IN RE PRADAXA | ) | MDL No. 2385 |
| (DABIGATRAN ETEXILATE) | ) | 3:12-md-02385-DRH-SCW |
| PRODUCTS LIABILITY | ) | Judge David R. Herndon |
| LITIGATION | ) | |

This Document Relates to:

ALL CASES

## CASE MANAGEMENT ORDER NUMBER 44
Attendance at September 18, 2013 Discovery Dispute Conference

**HERNDON, Chief Judge:**

As outlined herein, as well as in previous Court orders[1] and at numerous status conferences and hearings, the Court has been frustrated too often by the defendants' failure to follow the orders of the Court regarding the production of discovery documents. In a recent conference with the parties,[2] yet another example of such a failure was revealed to the Court. During the in-chambers portion of this conference, the Court made it quite clear to the parties where it felt

---

[1] *See e.g.,* Minute Order Staying The Enforcement Of Case Management Order Number 35 (Doc. 201) (noting that if "only a fraction of the allegations in the PSC's motion for reconsideration are true, the Court is troubled by the state of affairs which exist in this litigation"); Case Management Order Number 38 (Doc. 231 (addressing deficiencies in the defendants' production of custodial files and the defendants' apparent unilateral decision to withhold certain "highly confidential" documents); Order Denying Defendants' Letter Request to Reconsider CMO 37 (Doc. 240) ("where there's a will there's a way") (addressing the Court's frustration with discovery and production matters); Minute Order And Notice Of Hearing On Discovery Disputes And Alleged Discovery Violations (Doc. 261) (noting additional discovery concerns).

[2] The Status Conference held on September 4, 2013.

the responsibility for such failures lay.[3] The Court's conclusions were twofold: First, the Court inferred that, from the beginning of this litigation, defense counsel had not done an adequate job of impressing upon defendants' employees their obligations relative to discovery. Second, the Court found that defendants' employees were not giving sufficient attention to their obligations to turn over relevant production materials in the possession of the defendants directly or constructively.

Even today, as the Court is writing this order, the Plaintiffs' Steering Committee ("PSC") has alerted the Court to additional violations of the Court's orders regarding the production of discovery documents. In a letter dated September 11, 2013, the PSC alleges that the defendants failed to timely produce documents concerning Dr. Jeffrey Friedman, a custodial witness whose deposition is scheduled for tomorrow, September 12, 2013.[4] According to the PSC, on September 9 and September 10, the defendants produced additional relevant documents – documents the PSC contends should have been produced earlier in accord with CMO 30.[5] The PSC contends the untimely production included documents pertaining to a litigation consulting agreement between Dr.

---

[3] Just as the Court did in Case Management Order Number 38 (Doc. 231) and in the Order Denying Defendants' Letter Request to Reconsider CMO 37 (Doc. 240).

[4] This is the PSC's second attempt to depose Dr. Friedman. Dr. Friedman's first scheduled deposition was cancelled when – just days before the deposition – thousands of untimely documents from Dr. Friedman's file were produced by the defendants. *See* Transcript of July 9, 2013 hearing (Doc. 235). The deficiencies with regard to the production of Dr. Friedman's custodial file were a significant factor in provisions adopted in Case Management Orders 37 and 38, including the certification requirement adopted by the Court.

[5] After the initial deficiencies in Dr. Friedman's custodial file production, On August 23, 2013, the defendants certified, pursuant to CMO 37, that Dr. Friedman's supplemental production was complete.

Friedman and BIPI and significant documents pertaining to Dr. Friedman's retirement and exit from the company (including an exit interview). The PSC further contends that these documents were only produced after the PSC repeatedly probed the defendants about whether Dr. Friedman's production was complete and inquired about documents that the PSC suspected were missing from the production. The most recent allegations relating to Dr. Friedman, in addition to the allegations asserted in the PSC's motion to compel (Doc. 257 and Doc. 257) only serve to reinforce the Court's aforementioned assessment of the defendants' failure to adequately address their obligations relative to discovery.

It is the responsibility of counsel to make certain that clients they represent, including all relevant employees, are advised of what must be gathered, garnered, searched for, unearthed, collected, harvested, brought together, preserved, and provided to counsel for production pursuant to the discovery orders of the Court by certain deadlines. Thereafter, when a written or verbal call by the responsible corporate officer or litigation counsel goes out to produce all relevant documents for production at a time certain, all affected employees must give sufficient and thoughtful attention to the task at hand to insure that complete discovery is accomplished.

In the conference on September 4, 2013, the Court noted that if it heard of one more failure, it would require relevant United States and European corporate officers of defendants to be present in court for the purpose of the Court speaking to them of these failures. If there were one or two instances where the defendants

have failed to comply with this Court's orders, the Court would concentrate on the remedy, something which defense counsel is always asserting as that which they believe the Court should look to for solace. The problem is, the Court's pretrial discovery schedule, admittedly aggressive, has lost months to the defendants' discovery shortcomings. Further, ignoring the many violations of this Court's orders is simply not acceptable for this Court in its role as the sole federal judicial officer in this country assigned the task to marshal the discovery for this litigation. The Court must impress upon the parties the importance of compliance with its orders.

Accordingly, the Court is ORDERING the following individuals to attend the discovery dispute conference scheduled for September 18, 2013 at 9:00 AM:[6]

1. Edward Miller – Vice President and Global Head of Litigation and Government Investigations for Boehringer
2. Dr. Tim Sperling – Senior Counsel, BII
3. Nicole Maddox – Senior Counsel BI-USA

In so ordering, the Court notes that its authority to order the appearance of the defendants' officers or employees does not rest exclusively with the Court's Rule 45 subpoena power.[7] Rather, the Court has inherent authority that extends

---

[6] BIPI and BII identified these individuals in response to this Court's order (Doc. 261) asking the parties to identify responsible individuals within BIPI and BII to attend the September 18th conference.

[7] In their letter to the Court identifying responsible individuals within BIPI and BII to attend the conference, BIPI and BII indicated that they were agreeable to having the individuals identified herein attend the September 18th conference. The defendants also noted, however, concern regarding the Court's authority to require the attendance of corporate officers in relation to the geographical limitations set forth in Federal Rule of Civil Procedure 45.

beyond the authority provided by the Federal Rules of Civil Procedure. *See G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir. 1989) (en banc) (recognizing a court's "inherent authority" to take action in a procedural context outside the explicit language of the rules of civil procedure). This inherent authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 651. The fact that this is a consolidated multidistrict case involving complex issues and thousands of geographically disbursed plaintiffs only amplifies the Court's need to have the ability to fashion procedures that will foster an efficient, fair, and expeditious process.

Of course, the extent of the Court's authority is not limitless. The Court, "in devising means to control cases before it, may not exercise its inherent authority in a manner inconsistent with rule or statute." *Id.* at 652. This means that "where the rules directly mandate a specific procedure *to the exclusion of others*, inherent authority is proscribed." *Id. (emphasis supplied).*

With the above principles in mind, the Court is confident that it has the authority to order the appearance of the identified corporate individuals at the September 18th discovery dispute conference. The Court cannot effectively manage this complex multidistrict litigation without resolving the defendants' continuous disregard for this Court's orders. The Court is also confident that its order of appearance is not inconsistent with the procedures outlined in Rule 45.

The Court's conclusion is supported by the First Circuit Court of appeals decision in *Brockton Savings Bank v. Peat, Marwick, Mitchel & Co.,* 771 F.2d 5, 10-11 (1st Cir. 1985), *cert denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986) (concluding that, under circumstances similar to those present in the instant case, a district court has the authority to order the attendance of corporate employees at pretrial proceedings). In *Brockton Savings Bank,* the appellate court upheld a district court's order of appearance by corporate officers to resolve a discovery dispute based on the court's inherent authority to manage its docket. The corporate defendant argued that the district court's order to produce the corporate officers at the discovery hearing violated the geographical restrictions contained in Rule 45. *Id.* at 9-10. The appellate court concluded that the ordered appearance was not appropriately characterized as a subpoena requiring the attendance of a witness at a hearing or trial pursuant to Rule 45. *Id.* at 9-13. Rather, the appellate court explained, the district court utilized its inherent authority to manage its own docket and "acted to vindicate the integrity of a proceeding which it had been managing for more than a year." *Id.* at 11. In doing so and in light of the repeated discovery violations in issue, the appellate court found that the district court acted "well within its discretion." *Id.* at 12. The appellate court went on to explain as follows:

> It seems to us central to the functioning of a court that it be able *sua sponte* to explore directly and promptly the truth and circumstances of the averred disappearance or "non-retention" of long-assumed existing evidence and to impose sanctions for the unexplained refusal to permit such exploration. Such power is just as essential and just as reasonable as the powers to dismiss for want of prosecution, to

hold parties or counsel in contempt, to dismiss frivolous cases, or to vacate judgments procured by a fraud on the court. Great deterrent value is to be derived from the imposition of sanctions for such abusive litigation practices,

*Id.*

In the instant case, as in *Brockton Savings Bank*, the Court must be able to explore the circumstances surrounding the defendants repeated violations of this Court's orders. Such conduct cannot continue and it is imperative that the Court address these issues with the parties directly.

**SO ORDERED:**

David R. Herndon
2013.09.11
15:23:00 -05'00'

**Chief Judge**                                                                Date:  **September 11, 2013**
**United States District Court**