UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

_____
IN RE PRADAXA                )  MDL No. 2385
(DABIGATRAN ETEXILATE)       )  3:12-md-02385-DRH-SCW
PRODUCTS LIABILITY           )  Judge David R. Herndon
LITIGATION                   )
_____

**This Document Relates to:**

**ALL CASES**

<u>**CASE MANAGEMENT ORDER NUMBER 50-1**</u>
Regarding BII's Certification as to Professor Thorstein Lehr

**HERNDON, Chief Judge:**

In Case Management Order Number 50 (Doc. 320), the Court Ordered as follows with regard to Professor Thorstein Lehr, a former Boehringer Ingelheim International GmbH ("BII") employee:

> The Court directs BII to produce all complete "files" of Professor Lehr within 7 days. If that proves impossible because they have been destroyed due to the fact that he was not subject to the litigation hold, defendant shall so certify to the Court. Once the Court, knows for certain what defendant's response to this order is in this regard, a further order will issue, allowing more time with possible conditions, or an order assessing sanctions pursuant to Rule 37 or the Court's inherent authority, if appropriate.

(Doc. 320 pp. 45-46).

In response to the above, BII submitted an affidavit to the Court on December 16, 2013 (attached hereto as Exhibit A). The affidavit, in relevant part, attests to the following:

- Prof. Lehr's email account – the account was maintained after he left the company. Thus, Prof. Lehr's email as it existed when he left the Company was available for collection review, and production. BII produced over 4,000 responsive emails on November 7, 2013. The responsive emails produced by BII dated back to the end of January 2009, when Prof. Lehr began working on Pradaxa.
- Prof. Lehr's "user share" – On December 13, 2013, in response to further inquiries, BII advised counsel that Prof. Lehr's user share was maintained after he left BII. The user share has been collected and contains documents dating back to December 1998. BII is now in the process of producing three responsive documents located in Prof. Lehr's user share.
    - Notably, in an affidavit previously submitted to the Court, BII stated that "Prof. Lehr's workstation, *user share*, and paper documents are not available to be collected. The only part of Prof. Lehr's custodial file available for collection is his e-mails." (Doc. 302-6 ¶ 4) (emphasis added). In other words, the affidavit previously submitted to the Court contained inaccurate information with regard to Prof. Lehr's user file. Further, only now, after an inaccurate affidavit was provided to the Court and after issuance of CMO 50, does BII make "further inquiries" to determine that the user share is in fact available for production.

- Prof. Lehr turned in his desktop, laptop and blackberry phone when he left BII. BII did not maintain Prof. Lehr's desktop, laptop or blackberry phone. As a result, they are no longer available for collection and cannot be produced.

It is now evident that BII cannot comply with this Court's order to produce all complete files of Prof. Lehr. **Accordingly, and in light of the Court's findings in CMO 50, the Court ORDERS as follows**:

At the close of Bellwether Discovery, the Court will consider imposing sanctions, related to the Prof. Lehr production, against BII under Federal Rule of Civil Procedure 37 for failure to comply with this Court's discovery orders, including BII's inability to produce the complete files of Prof. Lehr as ordered in CMO 50. The Court will also consider imposing sanctions related to the Prof. Lehr production under its inherent authority.

The sanctions specifically being considered by the Court in relation to the Prof. Lehr production are (1) an adverse inference jury instruction; (2) the striking of certain affirmative defenses; (3) otherwise precluding BII from making certain arguments at trial; and/or (4) deeming certain facts admitted at trial. These sanctions, if imposed by the Court, will apply to any actions pending before this Court at the time the sanctions are imposed.

The Court notes the Seventh Circuit has held a finding of bad faith is a prerequisite to the imposition of an adverse inference jury instruction (sometimes

referred to as the "spoliation inference" or "spoliation sanction"). *See e.g., Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) (to obtain an adverse instruction, the movant must show the documents were destroyed in bad faith). Further, in the adverse inference context, the Seventh Circuit has adopted a specialized definition of the term "bad faith." According to Seventh Circuit authority, when an adverse inference is being considered by the Court, "bad faith" is defined as "destruction for the purpose of hiding adverse information." *See Bracey v. Grondin,* 712 F.3d 1012, 1019-1020 (7th Cir. 2013); *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013); *Norman–Nunnery v. Madison Area Technical College*, 625 F.3d 422, 428–29 (7th Cir. 2010); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008); *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998).

For the reasons discussed in CMO 50, the Court finds the plaintiffs have presented sufficient evidence to establish BII destroyed or failed to preserve Dr. Lehr's laptop, desktop, and blackberry, in bad faith, for the purpose of hiding adverse information.

With regard to the remaining sanctions being considered by the Court, a finding of bad faith in general or of bad faith as defined in the adverse inference context is not a precondition to the imposition of sanctions. *See e.g., Melendez v. Illinois Bell Tel. Co.,* 79 F.3d 661, 671 (7th Cir. 1996) ("Bad faith, however, is not required for a district court to sanction a party for discovery abuses."); *Marrocco v. Gen. Motors Corp.,* 966 F.2d 220, 224 (7th Cir. 1992) (fault, which focuses on

the reasonableness of the offending party's conduct, may form a sufficient basis for sanctions). *See also Northington v. H & M International,* 712 F.3d 1062 (7th Cir. 2013) (discussing sanctions imposed for the negligent, but not willful, spoliation of evidence);[1] *e360 Insight, Inc. v. Spamhaus Project,* 658 F.3d 637, 642-643 (7th Cir. 2011) ("[plaintiff's] failure to comply with the district court's order was the result of at least negligence, which is a degree of fault sufficient for imposing sanctions").

In fact, a party's failure to comply with a Court's discovery order, standing alone, is a sufficient basis to impose sanctions under Rule 37(b)(2)(A). *e360 Insight, Inc. v. Spamhaus Project,* 658 F.3d 637, 642 (7th Cir. 2011). *See also Id.* (rejecting argument that sanctions were inappropriate because offending party's conduct was the "result of inadvertence rather than willfulness, bad faith, or fault" as "wholly misplaced" because "a showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery

---

[1] In this case, the defendant failed to preserve the content of certain employee email accounts after the duty to preserve had been triggered. The district court concluded that the defendants conduct was negligent but not willful and "(1) ordered [the defendant's] counsel to conduct another search for the documents; (2) assessed [the defendant] reasonable costs and fees; (3) deemed specific facts admitted at trial; and (4) precluded [the defendant] from making certain arguments at trial." *Northington,* 712 F.3d at 1064. The sanction included the following instruction to a jury or a judge in a bench trial: "At trial, the jury be instructed that beginning in July 2008, the defendant had a duty to preserve all electronically stored information, including emails, concerning plaintiff's allegations but did not do so. In addition, the defendant is barred from arguing that the absence of discriminatory statements is evidence that no such statements were made." *Id.* at 1065 n.1. On appeal, the plaintiff argued that this instruction was an adverse inference instruction which precluded summary judgment. The Seventh Circuit rejected this argument. In rejecting the plaintiff's argument, the Appellate Court noted that the jury instruction was not an adverse inference instruction and could not be an adverse inference instruction because it was based on negligence as opposed to bad faith. The instruction, the Seventh Circuit concluded, did not preclude entry of summary judgment. Although not directly addressed by the Appellate Court, it is notable that the court took no issue with the imposition of sanctions for the spoliation of evidence based on a finding of negligence.

sanction"). The noncomplying party's "culpability for [its failure to comply with a discovery order] determines only which sanctions the court should impose and not whether any sanctions are appropriate at all." *Id.* (internal citation omitted). Moreover, the appropriateness of a sanction is reviewed "not in isolation but in light of the entire procedural history of the case." *Id.* at 643 (internal citation omitted). In other words, the Court may consider "not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *Id.*

As noted above, BII's is unable to comply with this Court's directive to provide Prof. Lehr's complete custodial file.[2] The Court finds fault in BII's inability to comply with this discovery order. As described in CMO 50, with respect to Prof. Lehr's custodial file, BII acted unreasonably, negligently, willfully, and in bad faith.

In light of the above, the Court will consider imposing sanctions, at the close of Bellwether Discovery, for the discovery violations related to Prof. Lehr's custodial file. Prior to imposing any of the sanctions described herein, the Court will require the plaintiffs to make a particularized showing of prejudice relating to the Prof. Lehr production.[3] Accordingly, in conjunction with the scheduling for motions *in limine*, the plaintiffs shall submit briefing to the Court demonstrating

---

[2] As discussed in CMO 50, BII's conduct with respect to Prof. Lehr also violated BII's duty to preserve and other discovery orders previously adopted by this Court.

[3] Although prejudice is not required to impose sanctions under Rule 37 or under the Court's inherent authority, *Barnhill v. U.S.*, 11 F.3d 1360, 1368 (7th Cir. 1993), the prejudice to the non-offending party should be considered by the court when determining the appropriate penalty for discovery misconduct. *Marrocco*, 966 F.2d at 224.

the nature and scope of prejudice resulting from BII's discovery violations in relation to the Prof. Lehr production. The Court will then determine what, if any, sanctions are warranted in relation to the Prof. Lehr production.

**SO ORDERED:**

David R. Herndon
2013.12.18
16:18:07 -06'00'

**Chief Judge**  　　　　　　　　　　　　　　　　　　**Date: December 18, 2013**
**United States District Court**