UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

_____
IN RE PRADAXA                )        MDL No. 2385
(DABIGATRAN ETEXILATE)       )        3:12-md-02385-DRH-SCW
PRODUCTS LIABILITY           )        Judge David R. Herndon
LITIGATION                   )
_____

**This Document Relates to:**

**ALL CASES**

<u>**CASE MANAGEMENT ORDER NUMBER 62**</u>
Regarding the PSC's Second Motion for Sanctions (Doc. 302)
Addressing the Matter of Monetary Sanctions Only
In Accord with the Decision of the Seventh Circuit

**HERNDON, Chief Judge:**

## I.  INTRODUCTION

Presently before the Court is the PSC's motion seeking sanctions against Boehringer Ingelheim International GMBH ("BII") and Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") (collectively, "the defendants") for various alleged discovery abuses (Doc. 302).  The defendants filed a responsive brief on November 26, 2013 (Doc. 311). The Court heard oral argument on the motion on December 2, 2013. During oral argument, the defendants requested leave to file a supplemental response to address any new information alleged by the PSC during the hearing. The request for leave was granted and the defendants filed their supplemental brief on December 4, 2013 (Doc. 317).  The Court entered CMO 50

1

on December 9, 2014 (Doc. 320). In CMO 50, the Court found that certain discovery violations were in bad faith, imposed monetary sanctions against the defendants, and directed that certain of the defendants' overseas employees be deposed in the United States. In addition, the Court directed the defendants to provide supplemental briefing with regard to certain alleged discovery violations so the Court could further assess imposing sanctions relating to those alleged violations. On December 18, 2013, the Court entered CMO 50.1 which addressed sanctions related the defendants' supplemental briefing on failure to preserve the custodial file of Professor Thorsten Lehr (one of alleged discovery violations that required supplemental briefing) (Doc. 334).

On December 27, 2013, the defendants filed a Petition for a Writ of Mandamus against the undersigned judge. The petition sought a writ from the Seventh Circuit to vacate this Court's order compelling foreign deponents to be deposed in the United States and to vacate the Court's findings of bad faith. *In re Petition of Boehringer Ingelheim Pharmaceuticals, Inc., and Boehringer Ingelheim International GmbH, in Pradaxa (Dabigatran Etexilate) Products Liability Litigation* 2014 WL 274084 (7th Cir. 2014). In ruling on the defendants' petition, the Seventh Circuit found, in a two to one decision, the portion of CMO 50 compelling foreign deponents to be deposed in the United States to be improper and directed this Court to rescind that portion of the order. The Appellate Court, however, declined to vacate the Court's findings of bad faith.

Further, the decision clearly indicated that the Appellate Court, in ordering this Court to rescind the order, was also allowing it to revisit its sanctions.

The Court is presently in the process of restructuring, to the extent necessary, CMO 50. In addition, CMO 50 left several issues unresolved. Accordingly, the Court intends to address any unresolved issues in the pending reconstituted order. Finally, the reconstituted order will include and revisit those matters addressed in CMO 50.1. The purpose of this order is to address a discrete time sensitive matter that requires the Court's immediate attention – namely, the monetary sanctions being imposed by the Court. This matter is time sensitive because it includes the need to reimburse the plaintiffs for certain expenses related to past and future European depositions. This order will address only the issue of monetary sanctions. The reconstituted sanctions order, which will be docketed shortly, will address all other issues related to CMO 50 and CMO 50.1, including the Court's reasoning for imposing or not imposing sanctions and the Court's conclusions regarding matters that have arisen since the docketing of CMO 50 and CMO 50.1

## II. MONETARY SANCTIONS

In their motion for sanctions, the PSC requested a number of financial sanctions as a result of the defendants' transgressions. It asked for reimbursement for its fees and costs in pursuing the issue of the defendants' violations. The defendants agree they should be held accountable for that and the

Court so orders and directs the PSC to submit an itemization with an affidavit. Perhaps this has already been handled between the parties. It has not gone through the Court. On the other hand, as will be discussed in the reconstituted sanctions order, this pursuit is not yet an accomplished task.

The PSC requested that the Court revisit the issue raised by it through motion that the employee depositions scheduled or to be scheduled in Europe be scheduled in a place convenient to the PSC and defendants' United States counsel. In the previous order the Court required the depositions that would have been taken in Europe be moved to the United States. This was the only part of the order which the divided opinion of the Seventh Circuit ordered be removed from the reconstituted order of the Court and therefore it has been removed.

However, as a further sanction against the defendants, based on the findings that will be discussed in detail in the reconstituted sanctions order and in the Court's inherent authority, as a further reflection of this Court's measured approach to sanctions in this case, the Court directs the plaintiffs to rent office space in Amsterdam, sufficient to meet their needs for staffing depositions there which will allow them to leave their supplies in place. The office space shall be available through August 2014 as depositions may need to be re-taken (as we have seen with late and untimely discovery plus the RE-LY audit which will undoubtedly necessitate the supplemental depositions of certain employees). Defendants shall reimburse plaintiffs for the cost of this rent which shall be invoiced by plaintiffs on a monthly basis. Defendants' shall reimburse plaintiffs

4

for the cost of their office space from the date of the previous sanction order (December 9, 2013) until they secure their monthly rental space as well. As a further sanction, the defendants shall reimburse the plaintiffs for the expenses of the court reporters, videographers and interpreters, utilized in Europe, beginning from the date of the previous sanction order (December 9, 2013) until the European depositions conclude. Further, the defendants shall reimburse plaintiffs for the portion of the travel expenses (including hourly fees for travel time) they have paid for the special masters to travel to Europe beginning December 9, 2013 and will be responsible for all travel expenses and travel time not yet paid. However, plaintiffs and defendants will continue to be responsible for paying equally the hourly fees of the special masters while attending the depositions. The Court considered whether to require defendants to reimburse and pay going forward the expense of plaintiffs' counsel in traveling to and from Europe for depositions, but rejects that exercise of its inherent authority.

The PSC also requested a corporate fine as well as individual fines to be paid by each defense counsel. The corporate fine sought by plaintiffs is in the nature of $20 million. In the course of their advocacy, plaintiffs argued, in essence, that the Court's last sanction, was laughable and urged the Court to put some teeth in its sanction this time. The Court did note a sigh of relief on the faces of the corporate general counsel, though no laughs from the defense side of the courtroom. The Court is not moved by such advocacy. Moreover, the Court is not generally inclined to impose sanctions. In this judge's recollection, perhaps

5

three times in seven years on the state bench and perhaps twice in fifteen years as a federal judge, this order being the third.  No judge should relish the serious obligation associated with a sanction, however, when a Court is confronted with a situation such as the instant one, it must act. But when it acts, it must do so in measured terms and in proportion to the wrongs and the prejudice before it. The wrongs here are egregious in the eyes of the Court. As hereinbefore provided, there may be more orders yet to come; orders which take actions designed to determine what aspects of the plaintiffs' case have been prejudiced or even so damaged as to interfere with their ability to prove what they legally have to prove and for the facts of this case to come out. Going forward, based on the findings heretofore, pursuant to the Court's inherent powers, and to encourage defendants to respect this Court and comply with its orders, the Court fines both defendants, jointly and severally, $931,500.00 ($500.00 per case). The Court acknowledges receipt of this sanction payment. In a prior order, the Court imposed a sanction based on a figure around $25,000.00. The Court assessed a figure at $20.00 per case for the number of cases then pending (the total ended up being $29,500.00). Then as now, the Court's imposition of a fine is a measured action, designed to let the defendants know that the Court's order and the Court deserve respect.  If a somewhat forceful reminder of those tenants in the law must be sent to defendants for their misdeeds which demonstrate something to the contrary, so be it. Never should such reminders shock any one's conscience. Here, the first one was quite modest indeed. It did not send a sufficient message, but then most if

not all the deeds the Court discussed herein were well underway, just not discovered. The fine imposed today, will not impact the defendants profit margins, but hopefully together with the potential future actions the Court may be forced to take, once it learns whether the plaintiffs have been so prejudiced by this misconduct as to be unable to fully prosecute their cases, the defendants will understand once and for all time compliance with the Court's orders is not an optional part of litigation strategy. Just as the Court did not exhaust what it has available to it in this instance, as the plaintiffs urged in the first sanction hearing, its measured approach to behavior modification leaves remedies yet to be addressed should defendants continue on the path of wrong-headed litigation strategy (a matter to be addressed in more detail in the Court's reconstituted sanctions order).

**SO ORDERED:**

Digitally signed by David R. Herndon
Date: 2014.03.12 16:41:51 -05'00'

**Chief Judge**  Date:  March 12, 2014
**United States District Court**