UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: PRADAXA (DABIGATRAN ETEXILATE) PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | 3:12-md-02385-DRH-SCW<br>MDL No. 2385 |

This Document Relates to: All Cases

## CASE MANAGEMENT ORDER NUMBER 95

**HERNDON, District Judge:**

### I. INTRODUCTION AND BACKGROUND

On April 13, 2015, the Plaintiffs' Steering Committee ("PSC") moved for an order ending its obligation to retain documents produced in this litigation (Doc. 643). Specifically, the PSC requests that the Court enter an Order modifying certain obligations that were imposed on it by the Court in Case Management Order Number 4 ("CMO 4") (Doc. 36) related to maintaining a document depository. The PSC contends that such an order is appropriate because (a) the obligation has been successfully completed; (b) the cost to maintain the depository is significant; and (c) no additional discovery is ongoing in this MDL.

Defendants Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") and Boehringer Ingelheim International GmbH ("BII") (together, "BI") have responded (Doc. 654). BI states that it does not oppose the PSC's request to be relieved of its duties to maintain and make available the plaintiffs' document depository,

provided that (1) the PSC is also required to destroy or return all confidential and highly confidential documents and derivative materials pursuant to the terms of Amended Case Management Order Number 2 ("CMO 2") (Doc. 208) and (2) plaintiffs' counsel for any remaining plaintiffs should be directed to confer with BI counsel in the next 30 days to agree on appropriate preservation for the few remaining cases, with any disputed issues to be submitted to the Court promptly thereafter.

In connection with the above, a small number of lawyers claiming to represent Post Master Settlement Agreement Claimants ("Post MSA Claimants") who have not yet filed lawsuits ask the Court to order the transfer of all defense document productions, as well as all PSC work product, to them (Doc. 645). They also ask the Court to reconsider CMO 94, which addresses preservation obligations BI must meet with respect to cases remaining in this MDL. These Post MSA lawyers ("Post MSA Counsel") do not have cases before this Court and they have disavowed any intention of proceeding before this Court.

In addition, the Post MSA Claimants have submitted a proposed order to the Court. In their proposed order, the Post MSA Claimants assert that pursuant to the terms of Case Management Order Number 16 ("CMO 16") they are *entitled* to common benefit material for the benefit of Post MSA Claimants.

The Post MSA Claimants also ask the Court to take notice of two orders entered by Judge Grant Miller, presiding over the Consolidated Pradaxa Litigation docket that continues in Connecticut ("CPL"). On April 28, 2015, Judge Miller

issued an order relating to BI's document preservation obligations. The order seeks to maintain the status quo while allowing the parties to "meet and confer." Pursuant to the April 28, 2015 order, the meet and confer process shall end on May 26, 2015. At that point, the Court will revisit the issue. The second order was issued by Judge Miller on May 4, 2015. The May 4, 2015 order relates to the sharing and preservation of discovery and work product in this multidistrict litigation. Judge Miller states that the CPL is "ready and willing to assume supervison [sic] of the discovery materials developed in the MDL." The Post MSA Claimants ask the Court to defer consideration of BI's compliance with CMO 94 in light of Judge Miller's April 28, 2015 order.

On May 5, 2015, the PSC filed a second motion with the Court (Doc. 661). In this motion, the PSC asks the Court to further modify CMO 4 by ordering the dissolution of the PSC. The PSC contends it has fulfilled all of the PSC duties as set forth in CMO 4. Specifically, the PSC asserts that its obligations to litigants within the MDL's jurisdiction (1) only extended to those litigants who had retained counsel before May 28, 2014 and were eligible for participation in the global settlement and (2) those obligations have been fully satisfied. The PSC further notes the law firms that comprise the PSC have registered all of their cases as part of the global settlement and are not pursuing any new cases at this time. Accordingly, the individual attorneys and law firms who have been appointed to the PSC no longer have any individual cases in this MDL. Because the current PSC members no longer have any cases pending in this MDL, they no longer meet

the requirements set forth in Case Management Order Number 1 (requiring PSC members to have at least one case pending in the MDL).[1] For these reasons, the PSC contends its members should be relieved of any further obligations established pursuant to CMO 4. The PSC asks that its request for dissolution be granted prior to the Court addressing other pending matters.

The PSC states that it takes no position with regard to the dispute regarding the Post MSA Claimants' entitlement to discovery obtained by the PSC and/or the PSC's work product. The PSC also states that Judge Miller has issued an order prohibiting the destruction of any *discovery*, which the PSC notes is not the same as the PSC's *work product*.  The PSC states that it will abide by this Court's ruling on what should be done with PSC work product as well as any discovery that has been identified as confidential or highly confidential. Finally, the PSC notes that the Court may want to consider the following issues if and when it disbands the PSC: (1) whether a new PSC should be constituted; (2) what should be done with the *discovery* (including Confidential and Highly Confidential material produced in accord with CMO 2) produced by BI; and (3) what should be done with the *work-product* generated by the PSC.

With respect to the discovery produced by BI and the work-product generated by the PSC, the PSC recommends that a "time-capsule" be made for the benefit of the cases on appeal in the event that these cases re-enter the MDL

---

[1] While some cases that are part of the global settlement have yet to be formally dismissed (pending lien resolution and distribution), for all intents and purposes, the members of the current PSC no longer have cases pending in this MDL.

litigation.[2] However, the PSC submits that the Post MSA Claimants are not entitled to this common benefit material. Specifically, the PSC argues as follows:

> While the PSC appreciates that the post-settlement lawyers claim they have a right to the common benefit work prepared (because they, as lawyers, settled cases in the global settlement and paid a small portion of their attorneys' fees into the common benefit fund), that fund was for reimbursement for the work that led to the global settlement of cases before this Court, and not future cases acquired and filed after the global settlement was reached. Those attorneys received the benefit of this common benefit work performed by the PSC for the cases that were part of the settlement program. However, all MDL cases have been resolved, and for all intents and purposes the MDL has served its purpose and been concluded. Less than a handful of lawyers represent some finite number of alleged cases, and sharing their fees from one plaintiff in a prior matter does not buy them the common benefit work for future. By way of analogy, by paying the common benefit assessment on one set of cases, an attorney is not purchasing a membership in a club they can access for all time. And surely, it does not force the PSC to stay in place in perpetuity.

(Doc. 661 pp. 7-8).

Three pleadings have been filed in response to the above. The plaintiffs/claimants named in the consolidated appeal before the Seventh Circuit (Docket Nos. 15-1067 – 15-1081) ("GoriJulian Plaintiffs") have filed a response (Doc. 664). The GoriJulian Plaintiffs contend that the PSC and CMO 4 should remain in place until their appeals have been resolved. The Post MSA Claimants have also responded (Doc. 662). The Post MSA Claimants reiterate their

---

[2] There are 15 plaintiffs/claimants, who opted into the voluntary settlement program, but then failed to fully comply with the terms and the Master Settlement Agreement. The claims of these plaintiffs were dismissed. These plaintiffs have appealed the dismissals, and that consolidated appeal is pending before the Seventh Circuit (Docket Nos. 15-1067 – 15-1081).

willingness to assume all costs associated with maintaining the Common Benefit Work Product. Further, the Post MSA Claimants state that should the Court order turnover of the Common Benefit Work Product, a new common benefit arrangement will be established in Connecticut for access to work product by lawyers in all jurisdictions. Finally, BI has responded (Doc. 666). BI agrees that the MDL is at its conclusion and should be disbanded. BI sees no need for a new PSC and reiterates that all confidential work product and discovery must be returned or destroyed in accord with CMO 2. Further, BI contends that the Post MSA Claimants are not entitled to Common Benefit Work Product. BI agrees that paying into the common benefit assessment for one set of cases did not buy counsel for the Post MSA Claimants a "lifetime membership" for any future case.

## II. CONCLUSIONS AND ANALYSIS

Having considered these various papers, the Court **RULES** as follows:

**A. Dissolution of the PSC**

Case Management Order Number 4 outlines the PSC's obligations and duties. In drafting CMO 4, the Court did not expect the PSC to prosecute Pradaxa cases in perpetuity. Considering the provisions of the global settlement, the Court finds that the PSC's obligations under CMO 4 extended only to those litigants who had retained counsel before May 28, 2014 and were eligible for participation in the global settlement. With the exception of the GoriJulian Plaintiffs, those obligations have been fulfilled. Further, for all intents and purposes, the claims of PSC clients have concluded and the PSC members can no longer meet the

requirements of CMO 1 (requiring that PSC members have at least one case pending in this MDL).

Accordingly, the Court disbands the PSC and relieves the PSC of its obligations and responsibilities. Fulfilling the needs of the GoriJulian Plaintiffs does not require keeping the PSC intact. Instead, as is described below, the PSC's document repositories for this litigation will be stored with the Special Master.

**B. Common Benefit Material and Post MSA Claimants**

Case Management Order Number 16 (governing common benefit work), outlines the rights and obligations of Participating Counsel. The rights and obligations outlined in CMO 16 cannot be viewed in a vacuum. Instead, they must be construed in light of other Case Management Orders, including CMO 2 (order governing discovery and confidentiality). As discussed below, any entitlements provided for in CMO 16 are subject to the restrictions provided for in CMO 2. Further, as the applicable case management orders are orders of this Court, the Court has broad discretion in interpreting them. See *Southworth v. Board of Regents of University of Wisconsin System,* 376 F.3d 757, 766 (7th Cir. 2004) (noting that the Court of Appeals resolution of such an issue is "guided by the broad deference given to a district court in its interpretation of its own orders. That court is in a best position to interpret its own orders." (internal citation omitted)).

With these principles in mind, the Court finds that Common Benefit Participants, including the Post MSA Counsel, bargained for Common Benefit

Material for the benefit of those litigants who had retained counsel before May 28, 2014 and were eligible for participation in the global settlement. Payment into the Common Benefit Fund did not entitle Participating Counsel to a "lifetime membership" for future cases.

This conclusion is supported by the discovery and confidentiality provisions contained in CMO 2 and the Confidentiality Agreement that accompanied CMO 2. As is discussed more fully below, Paragraph 19 of CMO 2 clearly requires the destruction or return of Confidential or Highly Confidential discovery, as well as derivative work product, at the conclusion of this litigation. Further, prior to accessing Common Benefit Material that was also the subject of CMO 2, Participating Counsel executed a Confidentiality Agreement (Doc. 208-1). The Confidentiality Agreement provided that the subject material would only be used "for purposes of *this* action" (emphasis added) (Doc. 208-1). The Confidentiality Agreement also provides as follows: "I will return all Confidential Information or Highly Confidential Information that comes into my possession, *and all documents and things that I have prepared relating thereto*, to trial or outside counsel for the party by whom I am employed or retained or from whom I received such material when requested to do so." (emphasis added)(Doc. 208-1).

The Court finds that Participating Counsel received the benefit of their bargain and that bargain is concluded by virtue of the conclusion of this MDL[3] and the provisions of CMO 2.

Accordingly, for the reasons discussed herein, the Post MSA Claimants' request for an order directing the transfer of all defense document productions, as well as PSC work product, is **DENIED**. As discussed above, CMO 16 was not intended to benefit parties whose claims only arose after this litigation was concluded. Moreover, the protections set forth in CMO 2 prohibit such a transfer.[4] The applicable case management orders, read together, demonstrate a clear intent to limit the use of Common Benefit Material as described herein. Further, as BI argues, the Post MSA Claimants do not have actions pending before this Court and their lawyers do not have standing to make this request.

## C. Preservation of Document Repositories and PSC Work Product for the Benefit of the GoriJulian Plaintiffs

As the PSC has been disbanded, CMO 4 is hereby amended to allow the PSC to terminate its document repositories for this litigation. The document repositories, however, will be maintained in escrow for the sole benefit of the GoriJulian Plaintiffs pending the outcome of their consolidated appeal with the

---

[3] As previously noted, while some cases that are part of the global settlement have yet to be formally dismissed (pending lien resolution and distribution), for all intents and purposes this litigation has concluded and all that remains is resolution of the GoriJulian appeal.

[4] For the same reasons, the Court cannot accept Judge Miller's offer to maintain all of the document production and the PSC work product.

Seventh Circuit. With regard to preservation of this material, the Court **ORDERS** as follows:

Within 30 days of entry of this Order, the PSC will submit its document repositories, including its work product, on a hard drive or in other comparable storage device to the Special Master at the following address: Randi Ellis, Esq., 2141 Quail Run Drive, Baton Rouge, LA 70808.  At that time, the document repositories will be under the Court's sole jurisdiction and no longer subject to the PSC's custody, possession, or control. The work product will be maintained in escrow at that address at the PSC's cost solely for the purpose of being available to the GoriJulian Plaintiffs in the consolidated appeal before the Seventh Circuit, Docket Nos. 15-1067 – 15-1081, should those cases be remanded to this Court for further proceedings on the merits. Upon the termination of those appeals, the document repositories shall be destroyed or returned in accord with paragraph 19 of CMO 2.

**D.  Return or Destruction of Confidential or Highly Confidential Information and Derivative Materials Pursuant to CMO 2**

Discovery in this case is governed by CMO 2. Case Management Order Number 2 requires that all discovery material designated as Confidential or Highly Confidential be returned or destroyed at the conclusion of this litigation. The Court finds that this also requires the return or destruction of all derivative material. In other words, work product derived from Confidential or Highly Confidential discovery must be destroyed or returned as contemplated by CMO 2. Any other conclusion would render the protections afforded by CMO 2

meaningless. Further, the Confidentiality Agreement executed by counsel in accord with CMO 2 clearly contemplated the return or destruction of derivative material (Doc. 208-1).

Paragraph 19 of CMO 2 addresses the timing and mechanism for the return of Confidential or Highly Confidential documents and derivative material. Pursuant to paragraph 19 of CMO 2, the subject material will be returned or destroyed, upon the written request of BI, at the "conclusion of this proceeding, *including any appeals related thereto*" (Doc. 208 ¶ 19) (emphasis added). There is no question that this material must be returned or destroyed as described in CMO 2 paragraph 19. However, in light of the consolidated appeal pending before the Seventh Circuit (Docket Nos. 15-1067 – 15-1081), BI's request is premature.

Instead, in accord with CMO 2 paragraph 19, after the conclusion of the consolidated appeal before the Seventh Circuit (Docket Nos. 15-1067 – 15-1081), BI may resubmit its written request for the return or destruction of Confidential or Highly Confidential discovery and derivative work product. Upon submission of this request, the Court will issue an order directing the Special Master and any counsel that still possess the subject material to comply with paragraph 19 of CMO 2. At that time, as provided for in paragraph 19 of CMO 2, Confidential and Highly Confidential discovery, as well as derivative work product, shall be destroyed or returned to BI. Whether the subject material is returned or destroyed shall be at the discretion of BI as provided for in CMO 2.

**E. CMO 94 and Preservation Obligations**

Defendants shall continue to meet their current preservation obligations, as modified by CMO 94. The Court **DENIES** the Post MSA Claimants' request to reconsider CMO 94. Instead, counsel for all remaining plaintiffs in this MDL are directed to confer with counsel for Defendants within 45 days regarding what preservation steps are appropriate going forward in light of the reduced scope of this litigation. At that time, the remaining parties may submit any disputes on this point to this Court. Nothing in this order is intended to affect Defendants' preservation obligations in other jurisdictions.

F. New PSC

The Court finds that a new PSC is unnecessary and declines to constitute a new PSC.

**IT IS SO ORDERED.**

**Signed this 13th day of May, 2015.**

Digitally signed by David R. Herndon
Date: 2015.05.13 10:59:57 -05'00'

**District Judge**
**United States District Court**